Filed 2/20/26  In re B.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re B.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. R.R., Defendant and Appellant. | E086327 (Super.Ct.No. J301156) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel for Plaintiff and Respondent.

1

This is a second appeal by defendant and appellant R.R. (MGM).[1] MGM previously appealed from the jurisdiction/disposition orders wherein the juvenile court refused to place her granddaughter, B.G. (Minor),[2] in her custody after considering the relative placement preference pursuant to Welfare and Institutions Code section 361.3.[3] Minor was detained from Br.G. (Mother) when she and Minor tested positive for drugs at the time of Minor's birth. MGM requested placement of Minor, but San Bernardino County Children and Family Services (CFS) recommended that the juvenile court deny placement due to the concerns of CFS that MGM had a domestic violence history, a prior history with child services, and did not acknowledge Mother's drug use, instead blaming her drug use on Mother's boyfriend. MGM also filed two section 388 petitions setting forth evidence in support of placement of Minor in her care. At the jurisdiction/disposition hearing, Mother was granted reunification services and Minor was placed in a foster home. The juvenile court denied placement with MGM on August 12, 2024, after reviewing the evidence presented by MGM in the section 388 petitions and considering the factors in section 361.3.

MGM filed an appeal from the jurisdiction/disposition orders denying her placement of Minor. In our prior opinion (*In re B.G.* (May 21, 2025, E084573) [nonpub.

---

[1] This court has taken judicial notice of the prior appeal in case No. E084573.

[2] Minor was given a name during the course of the proceedings; however, we use the initials B.G. (for "Baby Girl") as those initials appear in the record and briefs.

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

opn.]) (Opinion), this court found that the juvenile court properly denied placement with MGM because it was not in Minor's best interests to be placed with MGM. The remittitur issued on July 24, 2025.

Prior to issuance of the remittitur, MGM filed two section 388 petitions in the juvenile court on June 4, 2025, and June 6, 2025, seeking to change the August 12, 2024, order denying placement of Minor. Both were summarily denied by the juvenile court. MGM appeals the denial of her second section 388 petition filed on June 6, 2025.

MGM contends on appeal that the juvenile court erred by summarily denying her second section 388 petition filed on June 6, 2025, as she presented new evidence that supported placement of Minor with her and that it was in Minor's best interests to be placed with her..[4]

## FACTUAL AND PROCEDURAL HISTORY[5]

A.     SECTION 300 PETITION AND DETENTION

Minor was born in May 2024. Minor's father was alleged to be J.N. (Father). It was reported that Mother had given birth to Minor in a driveway; she had received no

---

[4] We asked the parties to address in supplemental letter briefs whether the appeal should be dismissed based on MGM filing the section 388 petitions seeking to change the juvenile court's order denying placement of Minor prior to the issuance of the remittitur in case No. E084573, in which the order denying MGM placement of Minor was the subject of the appeal. We will review the merits of MGM's claims despite the section 388 petitions being filed prior to the issuance of the remittitur. (See Code of Civ. Proc., § 917.7 ["The perfecting of an appeal shall not stay proceedings as to those provisions of a judgment or order which award, change, or otherwise affect the custody, including the right of visitation, of a minor child in any civil action, in an action filed under the Juvenile Court Law, or in a special proceeding"].)

[5] The summary of facts is derived from the prior Opinion and the current record.

prenatal care. Mother and Minor were taken to the hospital by ambulance. Mother tested positive for fentanyl and amphetamine. Minor tested positive for methamphetamine and fentanyl. Minor exhibited withdrawal symptoms including high-pitched crying, tremors, and irritability. Minor was transferred to the neonatal intensive care unit (NICU). Mother reported the use of fentanyl one week prior to Minor's birth and admitted to using methamphetamine during her pregnancy. Father reported being a "historical drug user" but denied current drug use. During the hospital stay, Mother and Father (Parents) left Minor unattended while they went into the restroom together.

Social workers went to the hospital; Mother had been discharged and Minor was still in the NICU. Minor was still experiencing withdrawal symptoms including high blood pressure, high temperature, high-pitched crying, and tremors. Parents had not visited Minor in five days. On June 3, 2024, Minor was ready to be discharged from the hospital. MGM had been visiting Minor at the hospital. Minor was placed in a foster home. Mother had two other children. Their father, A.B., had sole physical and legal custody.

MGM informed a social worker with CFS that she had not seen Mother during her pregnancy except for one time two weeks prior to Mother giving birth to Minor. Mother did not live with MGM. MGM had been trying to get Mother placed into a drug treatment program. MGM was applying for conservatorship of Mother. Mother did not have custody of her other children due to her drug use. Mother reported she used fentanyl and methamphetamine during her pregnancy and saw a doctor only once during

4

the pregnancy. Mother wanted Minor to go to MGM or the paternal grandmother. Mother reported that she was homeless.

MGM provided transportation for Minor's siblings to appointments and cared for them on occasion. A.B. had both siblings in his home and did not want them to be involved with Mother. Mother had no prior child welfare history or criminal record. Results were pending for emergency placement of Minor with MGM.

CFS filed a section 300 petition, which has not been made part of the record, but the allegations appear in the record (petition). It was alleged against Parents, pursuant to section 300, subdivision (b), that Mother had an untreated substance abuse problem, Mother and Minor tested positive for fentanyl and methamphetamine at Minor's birth, Mother should have known Father had an untreated mental health problem that impacted Minor's safety, Father should have known about Mother's untreated substance abuse problem, and Father suffered from untreated substance abuse and mental health problems. Under section 300, subdivision (g), it was alleged that Parents had left Minor without any provisions for her care. A detention hearing was held on June 6, 2024. Only A.B. is listed as being present at the hearing. Minor was detained and placed in a foster home.

B.      JURISDICTION/DISPOSITION REPORT

The jurisdiction/disposition report was filed on June 24, 2024. It was recommended that Minor be detained from Mother's custody; Mother was to be granted six months of reunification services. Father would be given reunification services if he completed a paternity test. Mother was not present at the detention hearing and could not

5

be notified of the jurisdiction/disposition hearing because her whereabouts were unknown. CFS was requesting a continuance of the jurisdiction/disposition hearing so Father could complete paternity testing. The prognosis of reunification for Parents was "poor." It was necessary to remove Minor from their custody. CFS had not been able to speak with Father or Mother during the reporting period. Mother had texted CFS and a meeting was scheduled but she did not show up for the appointment.

CFS reported that MGM was interested in placement of Minor. It was stated by the social worker, "On June 3, 2024, the undersigned was informed . . . that placement assessment [with MGM] was not approved due to CFS history and admitting to historical domestic violence in the home." The social worker reported meeting with MGM. The social worker reported that MGM appeared to minimize Mother's substance use. MGM stated Mother was only using substances because of Father. CFS concluded that MGM's home was not an appropriate placement for Minor and it was not in Minor's best interests to be placed with MGM. Parents had no visits with Minor during the reporting period.

The first jurisdiction/disposition hearing took place on June 27, 2024. Parents were not present but had been in contact with CFS. The juvenile court intended to continue the hearing for paternity testing. The juvenile court then inquired of MGM if there was any Indian ancestry. MGM denied any Indian ancestry. The juvenile court brought in counsel for Parents to be appointed only as a special appearance. The juvenile court sought to have the attorneys try to contact Parents. The juvenile court advised counsel they would be relieved if Parents could not be contacted.

6

After counsel was appointed, MGM apparently got the attention of the juvenile court. The juvenile court inquired if she had a question but admonished her that it was not allowed to answer questions. MGM stated, "[Father]—he's the one who introduced my daughter to drugs." The juvenile court responded, "Okay. Yeah." MGM began to speak but the juvenile court interrupted her and stated, "You need to talk to the worker about that. But how about authority for relative visits for the grandma. [¶] Grandma, just—did we get a relative form?" MGM responded, "The police—." The juvenile court responded, "Please, stop talking. [¶] If we can get a relative family find form, you'll fill that out. Everything you're trying to tell me, just talk to the worker and let them know. I will let you have visits too." MGM responded, "Thank you."

C.     MGM'S FIRST SECTION 388 PETITION

On July 5, 2024, MGM filed a section 388 petition. MGM sought legal custody of Minor. She was the only relative who could provide care for Minor. MGM provided several declarations in support of the section 388 petition. She recounted that Mother had a good childhood and married A.B. after high school. She had two children with A.B.

Mother had normal pregnancies and took care of her children. In February 2023, Mother met Father. Mother left with Father—abandoning her two children—and left A.B. to care for them. Mother came to MGM's house one time in November 2023 but quickly left again with Father. In May 2024, Mother arrived at MGM's home; Mother was pregnant. MGM took Mother to the doctor; there was no mention that Mother was using drugs.

7

Mother again disappeared with Father and gave birth several days later. The first time MGM heard about Mother using drugs was at the hospital.

MGM visited Minor every day in the hospital. MGM was informed by CFS that she did not pass the background check for placement of Minor. MGM stated that her arrest record, which brought her to the attention of CFS, had been ordered destroyed as it was 30 years old, and the domestic violence was never proven. The investigation by child services was seven years prior and there were no further investigations. MGM had filed for conservatorship of Mother. MGM provided a minute order from a court hearing held on November 15, 2023, ordering the destruction of records—presumably her prior arrest record. MGM also attached character letters.

The juvenile court denied the section 388 petition on July 5, 2024, concluding that it did not state new evidence or change of circumstances, and the proposed change of order was not in Minor's best interest.

On July 15, 2024, MGM filed a new declaration. MGM insisted that the social worker who spoke with her omitted her statements in the report. MGM stated that she was the victim of domestic violence, and the perpetrator was removed from her home. MGM had no contact with Mother during Mother's pregnancy and had no knowledge of her drug use. MGM insisted she did not "minimize" Mother's drug use. MGM was entitled to preferential placement of Minor as her grandmother. MGM accused CFS of the tort of intentional infliction of emotional distress on Minor and that she would have lasting trauma.

## D. JURISDICTION/DISPOSITION HEARING

An addendum to the jurisdiction/disposition report was filed on August 7, 2024. Parents had not contacted CFS, Father had not made himself available for a paternity test, and Parents' whereabouts were unknown.

CFS also reported that MGM claimed to have filed for conservatorship over Mother. MGM also claimed to have filed a petition for legal guardianship of Minor. MGM claimed that the "court" granted her legal guardianship over Minor on June 27, 2024, and demanded that Minor be turned over to her by CFS. It does not appear the documents were provided to CFS, and Minor was not placed with MGM. MGM had a visit with Minor on July 30, 2024.

At the beginning of the hearing on August 7, 2024, attorneys for both Parents were relieved as counsel. They had tried to contact Parents but had been unsuccessful. CFS submitted on its reports. CFS recommended reunification services for Mother but none for Father, who had not completed the required paternity test. Minor's counsel agreed with the recommendation. The juvenile court stated it had read the reports and sustained the section 300, subdivision (b) and (g) allegations in the petition.

As for MGM, CFS requested that she not be considered for placement of Minor. The juvenile court inquired of Minor's counsel, who submitted on the recommendation from CFS. The juvenile court noted that MGM had filed a section 388 petition and that it had been denied. The juvenile court then considered placement of Minor with MGM within the meaning of section 361.3. It stated that the primary concern was what was in Minor's best interests. The juvenile court had to consider the good moral character of the

9

relative, the duration of the relationship between the child and the relative, the ability to provide a safe and secure environment for the child, the ability to be able to care for the child, provide a home and necessities, and protect the child from his or her own parent. The juvenile court stated, "When you go to 'safe, secure, stable environment,' and then, 'Protect the child from Parents,' that's one of the issues I have based on the evaluation. Even having read [MGM]'s statements, [MGM] is not protective and does not recognize the risk Mother poses, and she puts it all on the alleged father, and, therefore, she wouldn't be able to protect the child."

The juvenile court then considered that MGM had a history with child services and a domestic violence history, which impacted her ability to provide a safe and secure environment for Minor. The juvenile court concluded, "[A]t this time, the Court will agree, and make its own independent finding, but I agree with [CFS]'s findings pursuant to [section] 361.3. Overall, it is not in the child's best interest." The juvenile court noted it considered that Parents wanted Minor placed with MGM. The juvenile court stated, "I don't have anything about the moral character, other than some past history, but it's not enough for me to say either way. But I think I have enough information to indicate that I'm not sure the home is safe enough for the child. One, because of MGM's stance on the case, and MGM's history."

MGM was granted visitation with Minor. The juvenile court addressed MGM as follows: "All right. [MGM], I'm going to give you visits, but I'm not going to have the child placed there for the reasons I said, but you can keep working on things and just try to develop a good relationship with the child. Okay? All right. Good luck." MGM

10

stated, "Can I—"  She was cut off by the juvenile court.  The juvenile court adopted the findings and orders.

E.    MGM'S SECOND 388 PETITION

On August 9, 2024, after the jurisdiction/disposition hearing, MGM filed a second section 388 petition.  MGM again contended that as Minor's grandmother, she should have Minor placed with her.  MGM provided an additional declaration.  It was nearly identical to the declaration filed on July 15, 2024; she submitted more character letters.  She again submitted the minute order from proceedings in which her prior arrest was ordered sealed and destroyed.

The second section 388 petition was denied without a hearing.  The juvenile court found that the second section 388 petition provided no new evidence or change of circumstances, and the proposed change in order did not promote Minor's best interests.  The juvenile court also noted that it had already denied the first section 388 petition.

MGM filed a notice of appeal on August 29, 2024, from the June 27, 2024, July 5, 2024, and August 7, 2024, rulings.

F.    APPEAL

On appeal, MGM raised the claim that the juvenile court erred by denying her the opportunity to present evidence and be heard in court regarding placement of Minor with her at the jurisdiction/disposition hearing.  We concluded that "The juvenile court was well aware of its discretion under section 361.3 in assessing MGM for placement.  The juvenile court outlined all of the relevant factors in considering whether Minor should be placed with MGM.  The juvenile court found that MGM was not protective as she did not

11

'recognize the risk Mother poses, and she puts it all on the alleged father, and, therefore, she wouldn't be able to protect the child.'  MGM had stated in open court Father was to blame for Mother's substance abuse and advised CFS that Father was the reason for Mother's drug use.  The juvenile court further felt that placement was not appropriate based on some history with child services, and the fact that MGM had some domestic violence history.  Although MGM minimized this history, she did not deny the history existed.  The juvenile court did not abuse its discretion by concluding that it was not in Minor's best interests to be placed with MGM."  We also found that MGM had failed to argue on appeal that the section 388 petitions should have been granted, and that the juvenile court had properly considered the evidence submitted with the section 388 petitions in finding that placement with MGM was not in Minor's best interests.  The Opinion was filed on May 21, 2025, and remittitur issued on July 24, 2025.

G.    SECTION 388 PETITIONS FILED PRIOR TO REMITTITUR ON APPEAL

On June 4, 2025, MGM filed a section 388 petition seeking to change the August 12, 2024, order at the jurisdiction/disposition hearing denying MGM placement of Minor.  MGM stated that on August 12, 2024, "the judge made the following order that I think should be changed:  The juvenile court denied placement of B.G. at the home of MGM pursuant to a 361.3 relative placement analysis and denied her two 388 petitions requesting placement."  MGM proffered what she insisted was new evidence from her ex-partner I.G. (MGF).  He signed a document accepting full responsibility for his involvement in a past CFS case, absolving MGM of any wrongdoing as she was the

12

victim of domestic violence. MGM requested placement of Minor in her home. MGM insisted that she would do her best to protect Minor from any harm and would not allow Mother contact with B.G. until she sought help and got off drugs. MGM checked the box asking that the juvenile court make a decision without a court hearing. MGF's declaration was attached to the section 388 petition. He insisted that he was the cause of the domestic violence and MGM was a victim. He and MGM were separated and were not in a relationship.

The juvenile court denied the section 388 petition on June 5, 2025, checking the box that "the proposed change of order, . . . does not promote the best interest of the child."

MGM filed a second 388 petition (which would be her fourth section 388 petition addressing this matter) on June 6, 2025. She stated that the order she sought to change was the denial of placement of Minor on August 12, 2024. She again referenced the declaration of MGF as new evidence but did not attach his declaration. She was committed to ensuring Minor's safety. Minor was comfortable around her during visits. She would not allow Mother or Father to have any contact with Minor until they were clean and sober.

MGM provided an additional declaration from Minor's maternal aunt K.G. (Aunt). Aunt accompanied MGM to visits with Minor but did not specify when these visits occurred. She had personally witnessed positive interactions between Minor and MGM. Minor appeared to be comfortable and happy in the presence of MGM. Aunt believed it was in Minor's best interests to be placed with MGM and be part of their family.

13

On June 11, 2025, the juvenile court denied the section 388 petition without a hearing again checking the box that it was not in Minor's best interests that the order denying placement of Minor with MGM be changed. On June 13, 2025, MGM filed her notice of appeal from the June 5, 2025, through June 11, 2025, orders.

**DISCUSSION**

In this appeal, MGM insists the juvenile court should have granted an evidentiary hearing on the second section 388 petition filed on June 6, 2025, as it provided new evidence in the form of the declaration of MGF and the declaration of Aunt. MGM seeks to have this court review the summary denial of the section 388 petition de novo and not pursuant to an abuse of discretion standard. MGM claims that her evidence and allegations "provide a strong basis to revisit the placement decision" made on August 12, 2024.

"Under section 388, a [person] may petition to modify a prior order 'upon grounds of change of circumstance or new evidence.' [Citations.] The juvenile court shall order a hearing where 'it appears that the best interests of the child . . . may be promoted' by the new order." (*In re K.L.* (2016) 248 Cal.App.4th 52, 61.) " 'There are two parts to the prima facie showing: The [petitioner] must demonstrate (1) [either] a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the [child].' " (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) "[T]he parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) A hearing on a section 388 petition need only be held if the proposed change "is in the

14

best interests of the child." (§ 388, subd. (a)(2); *In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [" '[I]f the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing' "].)

"We review the summary denial of a section 388 petition for an abuse of discretion. [Citation.] 'A trial court abuses its discretion when it applies the wrong legal standard or its factual findings are not supported by substantial evidence.' " (*In re R.F.* (2023) 94 Cal.App.5th 718, 728.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

MGM argues the proper standard of review of the juvenile court's denial of an evidentiary hearing on a section 388 petition is de novo review. She insists that since the summary denial of a section 388 petition involves a "preliminary, non-discretionary procedural decision" and is not a judgment assessing witness credibility or resolving conflicts in the evidence, the abuse of discretion standard does not apply. We reject such claim as this court has repeatedly found that the abuse of discretion standard applies to the summary denial of a section 388 petition (see *In re R.F.*, *supra*, 94 Cal.App.5th at p. 728 and *In re C.J.W.*, *supra*, 157 Cal.App.4th at p. 1079), and MGM has provided no authority that a de novo standard applies to the review of the denial of an evidentiary hearing on a section 388 motion. Moreover, a determination of whether it is in a child's best interests to change a court order—the decision the juvenile court made here—

15

necessarily requires the juvenile court to review all the evidence in the case and determine whether the best interests of the child are met by changing the court order. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189 ["In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case"].) This is a decision best made by the juvenile court and properly reviewed for an abuse of discretion.

Here, MGM provided new evidence of the declaration of MGF, who took responsibility for the domestic violence, and that MGM had no involvement in the domestic violence. He insisted that he and MGM were "permanently separated and have not resumed a relationship." In addition, MGM presented the declaration of Aunt, who witnessed visits—occurring at some unknown time—between MGM and Minor and that there were "positive interactions" between MGM and Minor. Aunt believed that MGM could provide a safe, loving and stable environment for Minor. The juvenile court appears to have considered this new evidence and decided the section 388 petition, filed on June 6, 2025, based on what was in the best interests of Minor.

While the juvenile court had previously expressed concern about the domestic violence in MGM's relationship and encouraged MGM to attend visits with Minor to form a relationship, in denying placement the juvenile court also was concerned about MGM's protective capacity for Minor. MGM told a social worker that Father was to blame for Mother's drug use. She also interrupted the juvenile court during a hearing to advise the court of her opinion that Father was to blame for Mother's drug use. In the section 388 petition, MGM declared, "I will not allow her biological parents . . . any

16

contact until they get clean, seek help, and are approved by the Court." She did not acknowledge that Mother was responsible for her own drug use, nor that Mother could pose a risk to Minor. MGM's conclusory allegation in the petition that she would not allow Mother contact until she was "clean" did not have to be accepted by the juvenile court. Further, at the point of this fourth section 388 petition, Minor had been in her foster placement for over one year. We presume that Minor remained in that placement as the records of what has occurred in the case since the August 12, 2024, hearing, are not before this court. MGM failed to allege that the placement with her over the foster parents, with whom Minor had been placed her entire life, was in the best interests of Minor. The juvenile court properly denied the June 6, 2025, section 388 petition without affording MGM an evidentiary hearing.

## DISPOSITION

The juvenile court's order denying the June 6, 2025, section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
_____
J.

We concur:

RAMIREZ
_____
P. J.

MENETREZ
_____
J.